# UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No: 20-CR-111-RAW-1 |
| | ) | |
| AMY LEANN HALL, | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT AMY LEANN HALL'S SENTENCING MEMORANDUM

COMES NOW, the Defendant herein, Amy Leann Hall (hereinafter "Ms. Hall"), by and through her attorney of record, Carla R. Stinnett, and moves the Court, to accept the plea agreement entered into on November 28, 2022, and sentence Ms. Hall in accordance therewith. The requested relief herein is "sufficient, but not greater than necessary" to comply with the purposes of punishment.

## I.    LEGAL STANDARD.

Following *Booker*, the Court must impose sentence in accordance with 18 U.S.C. §3553(a). In particular, the Court must fashion a sentence "sufficient, but not greater than necessary" to comply with the purposes of punishment set forth in 18 U.S.C. §3553(a)(2). *Id.*; *see, e.g., Pepper v. United States*, 131 S. Ct. 1229, 1242 (2011) (sentencing in accordance with "sufficient, but not greater than necessary" mandate is court's "overarching duty"); *Kimbrough v. United States*, 552 U.S. 85, 111 (2007) ("sufficient, but not greater than necessary" requirement is the "overreaching instruction" of §3553(a)).

## II.    HISTORY AND CHARACTERISTICS OF AMY LEANN HALL

### A.    Background Information

Ms. Hall was born on October 11, 1980, in Tulsa, Oklahoma, to James "Jim" (65) and Sharon Hall (deceased). Ms. Hall remembers that her father was verbally and physically abusive to both her

and her mother throughout the time her parents were together. She has one older brother, James Jr., aka Jimbo (50). Ms. Hall's family moved to Okmulgee when she was about 5 and she went to school in Beggs and then Okmulgee. She has remained in the Okmulgee area for most of her life. When Ms. Hall was 17 years old, her mother passed away at the age of 41. Her mother was a severe alcoholic and that very likely was a major contribution to her early death. At her time of death, there were multiple contusions on her body in various stages of healing, in addition to a subgaleal hemorrhage. No specific natural cause of death was found.

Ms. Hall graduated from Okmulgee High School in 1999. She had previously gone to school at Beggs High School but after her mother's death, she transferred to Okmulgee for the last semester of her senior year. She attended Green County Technology Center where she received certifications in medical terminology, phlebotomy and computer technology. She then attended OSU Institute of Technology where she earned an associate degree. Ms. Hall has an openness to furthering her education and training while in custody at BOP. Prior to the instant offense, Ms. Hall was working in home health. Previous employment included Keystone Food Services, a food management company that provided food to school cafeterias. Ms. Hall was living on family property in Nuyaka, Oklahoma, at the time of this incident and her arrest in this matter. Her father and brother continue to live on the family property and have had almost no contact with her since her arrest in November 2018.

Ms. Hall met G.T. (her children's father) at Okmulgee High School. Soon after high school, the parties began residing together and embarked on a tumultuous 20-year common law marriage with him. The couple had three children, all of whom were a part of the instant offense. She describes her relationship with G.T. as abusive. G.T. had cheated on her, had a gambling problem, had a drug addiction and did not provide for their family. He has a criminal history of possessing and selling illegal drugs. Beginning in 2006, there were multiple protective orders and/or domestic abuse

charges filed by Ms. Hall against G.T.

**B.     Medical History**

Cimmaron Correctional Facility and St. Francis Hospital indicate Ms. Hall has the following diagnoses: Hepatitis C, Asthma and Chronic Bronchitis/Congestive Heart Disease. She further has the following medical and/or surgical history: MVA-splenic rupture, hepatic contusion; Two (2) Cesarean Sections; Peripheral edema; at least two suicide attempts; a surgical laceration repair; Possible MRSA; a need for cardiac chronic care clinic, a need for a low sodium diet; and potential previous traumatic brain injury.

**C.     Mental Health History**

Ms. Hall has a history of mental health concerns related to bipolar disorder, mood disorder, depression, anxiety, insomnia, adjustment disorder, and Post Traumatic Stress Disorder (PTSD). She is prescribed Seroquel and Paxil for her bipolar disorder. Ms. Hall noted participating in three separate psychological inpatient treatment programs. On September 1, 2012, Ms. Hall was admitted to St. Francis Hospital ER overnight because she is suicidal with a "plan to cut both wrists or to put a gun to her head." Treatment records at that time state that she "has a lot of stresses" and "definitely needs psychiatric rehabilitation before going home." She was prescribed Paxil, an antidepressant. On October 25, 2013, Ms. Hall was hospitalized at Crisis Care Center after reporting a 2-month history of "conversations in her head, hearing things that are not there, vivid images of shooting herself with a gun and hurting her children." She was allowed to sign out against medical advice the following day. She received no referrals, no follow-ups, and no printed material. Ms. Hall's primary care physician for just under 7 years, and throughout her incarceration at Okmulgee County Jail, from 2013-2019, made no mental health referrals or prescribed any medications until 2019, when he prescribed Prazosin for her nightmares.

The family had a history of law enforcement contact that culminated in many 911 calls. It is

difficult to know whether law enforcement was influenced by Ms. Hall's father (who is a long-standing community member with significant influence) or if the situation is being accurately reflected in law enforcement reporting. Certainly, many of the calls, no matter the action taken by law enforcement, were the result of the factual recitation made by Ms. Hall or the result of a mental crisis or break. On July 24, 2014, Ms. Hall called 911 stating her father and brother were threatening her but she refused to file a report. On February 2, 2015, Ms. Hall called 911 advising that her father and brother came to her house and threatened to kill her with a shotgun. Her father was asleep at his house and said he hadn't spoken to Amy in 3 days. On February 5, 2015, her brother called 911 stating Amy called him 20 times that morning, came over and yelled at him and his wife. He believed she was trying to hit him with her car. Amy stated that her brother was prowling around her yard with a gun and that he had surveillance cameras that were watching her 24 hours a day. On June 29, 2015, Amy called 911 stating that her father and brother are threatening her through technology. She called 911 on July 21, 2015, and again on July 25, 2015.

On October 16, 2015, Ms. Hall called 911 stating that G.T. beat her up. According to reports, she had no visible injuries. Amy apparently admitted that she just wanted him out of the house. This is typical in domestic violence situations and the cycle of violence. On November 13, 2015, Amy called 911 and the deputy noted she was "hysterical." Ms. Hall said he (G.T.) was yelling in front of the kids and that her 11-year-old was telling her to call 911. G.T. showed up with her brother and G.T. stated that Amy was yelling at him. Her father showed up, so G.T. left with him because he didn't want to fight in front of the kids. On January 22, 2016, Ms. Hall called 911 stating that G.T. choked her and threatened to kill her in front of the kids. No marks or injuries were noted by law enforcement although Ms. Hall maintains it occured. On February 19, 2016, Amy's brother, his wife and her father petitioned the court to have her involuntarily committed. The judge ordered Amy to pre-hearing detention based on statements made by her family. Amy's subsequent evaluation by

Spring Creek Recovery Center determined that she is not "a person in need of treatment" according to Oklahoma law. They diagnosed her with adjustment disorder with mixed anxiety and depressed mood. It was noted this is a short-term condition arising due to difficulty in managing stressful life changes such as coping with work-related problems, loss of loved ones, or relationship issues that led to significant impairment of functioning. On February 24, 2016, Amy was ordered to complete outpatient treatment. She complied.

On March 11, 2016, CREOKS diagnosed Ms. Hall with bipolar disorder. While navigating the difficulties of this illness and the contours of a toxic relationship. Ms. Hall ended up filing protective orders against G.T. on May 3, 2016 and June 1, 2016, and both ended up being dismissed. Things seemed to get better and on October 23, 2018, her brother told DHS that he had no concerns for Amy's mental health. On November 1, 2018, Ms. Hall was arrested for the instant offense. While in custody, she attempted suicide while at Okmulgee County jail.

Information provided by CREOKS, Behavioral Health Services, Cimarron Correctional Facility, St. Francis Hospital and other various medical facilities indicate Ms. Hall suffers from the following mental health disorders: Bipolar disorder, current episode manic without psychotic features, moderate; suicide ideation; depression; anxiety; adjustment disorder with mixed anxiety and depressed mood; mood disorder; opioid abuse; alcohol abuse; schizoaffective disorder, bipolar type; and Post Traumatic Stress Disorder (PTSD). Ms. Hall is interested in participating in mental health treatment while in the custody of the BOP. Ms. Hall did have a history of opiate abuse for a period of two years about seven to ten years ago and used methamphetamine for a period of time over fifteen years ago. She has been clean from substances for several years and does not believe she needs substance abuse treatment.

### III.   NATURE AND CIRCUMSTANCES OF THE OFFENSE[1]

Ms. Hall is the biological mother of the three minor children at the center of this case. During the time period of this offense conduct and over the previous two years, Ms. Hall had been in a custody battle with G.T., the children's biological father and her common-law husband. G.T. filed for divorce with the help and financial backing of Ms. Hall's father and brother on June 16, 2016. A judge granted G.T. temporary custody of the children and ordered Ms. Hall to leave the house. Her family filed a restraining order against her which was signed by a judge on July 13, 2016, but not filed until August 10, 2016. Ms. Hall was apparently forced to live in a homeless shelter for a couple of months. Drug testing was ordered and Ms. Hall's hair follicle drug test came back clean August 8, 2016, and G.T.'s came back positive for drug use on October 21, 2016. A Judge granted the divorce on March 2, 2017, and awarded G.T. the house and custody of the children. Then on September 19, 2018, a DHS investigation was opened on G.T. for allegations of Neglect/Exposure to Domestic Violence and Sexual Abuse perpetrated by G.T. against the two female minors. Ms. Hall was given temporary custody during this investigation.

Ms. Hall was under immense stress during this time. Her brother and father were working against her and helping G.T. take her children from her. No one believed any of the allegations against G.T. for domestic abuse or alleged sexual abuse. She had been forced out of her home and restrained from seeing or even contacting her family during certain time periods. This, after years of what she reports as mental, emotional, physical and potentially sexual abuse at the hands of G.T. She felt like everyone was against her and that she had no support. Finally, in September of 2018 her children were back in her care and DHS was investigating G.T. However, she lived under the constant threats and fear from not only G.T. but also her father and her brother coming to take her

---

[1] Counsel in this matter was appointed subsequent to the change of plea pursuant to a plea agreement in this case. While the prior section was put together from reports and through conversations with and writings of the mitigation specialist previously utilized in this case while it was a capital case, Ms. Hall has not readily discussed the facts and circumstances of the offense conduct. Most of this is taken from prior reports.

children away from her again and ousting her from her home. Ms. Hall had struggled with mental health issues for years but instead of being supported by her family or doctors she was ridiculed and ostracized by her family and ignored by her doctors. Reports indicate Ms. Hall got a letter from DHS advising that the investigation against G.T. was not substantiated at or near the time of the offense conduct herein. The children were shot and the two killed on or about November 1, 2018.

## IV. THE NEED FOR CORRECTIONAL TREATMENT AND PROTECTION OF THE PUBLIC FROM FURTHER CRIMES OF AMY LEANN HALL.

The need for correctional treatment in this instance is served by mental health treatment for Ms. Hall. The significant mental health history and the potential for other undiagnosed, or untreated, mental health issues need attention. Ms. Hall will live out the rest of her days in a prison cell. She will never be in a situation where the public is subjected to the consequences of her untreated mental illness again. However, she will be in a prison community and hopefully can be treated to the point where she can obtain some quality of life and thrive as free from conflict as possible.

## V. CONCLUSION.

This memorandum presents facts and circumstances to assist the Court in finding it appropriate to accept the plea agreement entered into on November 28, 2022, and sentence Ms. Hall in accordance therewith.

Respectfully Submitted,

*Carla R. Stinnett*

_____

Carla R. Stinnett, OBA No. 19532
STINNETT LAW
404 East Dewey Avenue, Suite No. 100
Sapulpa, OK 74066
Telephone: (918) 227-1177
Email: carla@stinnettlaw.com
**Attorney for Defendant Amy Leann Hall**

## CERTIFICATE OF SERVICE

I, Carla R. Stinnett, Esq., hereby certify that on the 21st day of March 2024, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Sarah McAmis, Esq. – sarah.mcamis@usdoj.gov
*Assistant United States Attorney*

*Carla R. Stinnett*

_____
Carla R. Stinnett, Esq.
*Attorney for Defendant Amy Leann Hall*